911 F.2d 725
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
James Henry FERGUSON, Defendant-Appellant.
 No. 90-5011.
 United States Court of Appeals, Fourth Circuit.
 Submitted July 25, 1990.
Decided Aug. 22, 1990.
 
 Appeal from the United States District Court for the District of South Carolina, at Orangeburg. Charles E. Simons, Jr., Senior District Judge. (CR-89-122-5)
 I.S. Leevy Johnson, Johnson, Toal & Battiste, Columbia, S.C., for appellant.
 E. Bart Daniel, United States Attorney, Eric Wm. Ruschky, Assistant United States Attorney, Columbia, S.C., for appellee.
 D.S.C.
 AFFIRMED.
 Before PHILLIPS, SPROUSE and CHAPMAN, Circuit Judges.
 PER CURIAM:
 
 
 1
 James Henry Ferguson appeals the district court's denial of his motion for a judgment of acquittal. Convicted by a jury on two counts of attempt to possess cocaine with intent to distribute, Ferguson contends that there was insufficient evidence to have submitted the case to the jury so that the district court erred in denying his motion for acquittal. We affirm.
 
 
 2
 * The sequence of events leading to Ferguson's ultimate trial and conviction begins at the post office in Santee, South Carolina. In March 1989, postal officials became suspicious of possible drug activity by the defendant when they discovered an unusually large number of Express Mail parcels being sent to his address. Eleven packages were sent to the defendant's address between December 20, 1988, and February 1, 1989. Each package had a handwritten label; each package had a New York return address. Upon investigation, authorities learned that several of the New York addresses were either abandoned or non-existent buildings.
 
 
 3
 On March 23, 1989, an Express Mail package arrived in the Santee post office addressed to John Ferguson, Route 2, Box 714-C, Santee, South Carolina.[1] Again, authorities learned that the return address on the package was an abandoned building in New York. Postal inspectors obtained a federal search warrant for the package and, upon opening the package, they discovered approximately thirty grams of crack cocaine, empty vials and vial caps.[2] The postal authorities removed most of the crack cocaine and replaced it with soap.
 
 
 4
 On March 24, 1989, postal inspectors delivered the package to the defendant's home. Ferguson signed for the package and took it into his residence. Minutes later, postal inspectors and local law enforcement officers presented the defendant with a federal search warrant and searched his home. They uncovered a small metal tube, a small plastic set of scales and a vial--all with cocaine residue. Additionally, they uncovered a bag of plastic vials, $1,424 in cash wedged between a wall and a dining room cabinet, and a slip of paper with Brenda Asbery's name and address on it.
 
 
 5
 During the search, an individual telephoned Ferguson's residence. Captain Martin of the Orangeburg Sheriff's Department, posing as an associate of Ferguson's, answered the telephone. The caller requested Martin to bring two "big ones" to the golf course.
 
 
 6
 On or about March 25, 1989, another handwritten Express Mail parcel from New York arrived in the Santee post office. It was addressed to Brenda Asbery, Route 2, Box 723-D, Santee, the same person and address on the slip of paper uncovered at the defendant's home. This package also had a fictitious New York return address. After a drug dog alerted to the package, authorities obtained a federal search warrant, opened the package, and found approximately 67 grams of crack cocaine, 10 grams of cocaine and bags of vials and caps.[3]
 
 
 7
 On May 3, 1989, a grand jury returned a three-count indictment against Ferguson, charging him with two counts of attempted possession of cocaine with intent to distribute, in violation of 21 U.S.C. Sec. 846, and one count of possession of cocaine with intent to distribute, in violation of 21 U.S.C. Sec. 841(a).
 
 
 8
 At trial, postal inspectors and local law enforcement officials testified that during the search of Ferguson's house, the defendant denied knowledge of who sent the packages to him, but admitted to using the crack sent to him and to giving it away to friends. One officer testified that when he asked the defendant about the eleven previous packages sent to his address, Ferguson protested that only about seven of the packages contained drugs.[4] Officials further testified that during the search, the defendant asked if he could "smoke up" and later unsuccessfully tried to smoke a cigarette which contained crack cocaine. Finally, an officer testified that Ferguson directed him to a small piece of metal tube in the backyard, which the defendant allegedly admitted he used as a crack pipe.
 
 
 9
 The government also provided evidence that between August 8, 1988, and March 22, 1989, the defendant and his wife wired to their son in New York a total of $13,990 at a cost of $623. Also, between October 26, 1988, and January 31, 1989, a total of $7,816 in cash was deposited in the defendant's bank account. Withdrawal of $5,000 was made on February 14, 1989, and again on February 23, 1989.
 
 
 10
 Brenda Asbery, who lived with the defendant's nephew, testified that in early March 1989, a package arrived addressed to her. As the package arrived at her mailbox, Ferguson attempted to retrieve the package, claiming that it was intended for him. He explained that he and his wife were having difficulties and that his wife would destroy anything sent to him. Asbery stated that she gave Ferguson permission to use her box, but asked that he inform her in the future. Asbery testified that she knew nothing about the Express Mail parcel mailed to her on March 23, 1989, nor did she know how the piece of paper with her name and address on it came to be in the defendant's home.
 
 
 11
 Testifying in his defense, Ferguson first denied, but then later admitted, that he quit his position at Con Edison in New York after testing positive for cocaine use. According to the defendant, he then moved to Santee, South Carolina, where he started a welding business. Ferguson denied making any admissions to postal inspectors or local law enforcement agents regarding drug use and denied trying to smoke crack cocaine during the search. Concerning the mailed packages, Ferguson testified that associates from the Con Edison welding shop in New York used false names to send him gloves and couplings to help him start his welding business and that their son sent them clothing. Both Ferguson and his wife denied use of the scales and had no explanation for the cocaine residue found on the scales. Concerning the $1,424 found in the house, the defendant averred that he had saved the money while working at a second job at a body and fender shop in New York. Finally, both Ferguson and his wife explained that the money wired to their son was money that the latter had won gambling in New York. According to Ferguson, their son had asked them to hold his winnings for him as he was saving to build a house, but that from time to time he needed money to repair his car, which had been broken into several times.
 
 
 12
 On July 26, 1989, a jury convicted the defendant of Counts One and Two of the indictment--attempt to possess cocaine with intent to distribute. The jury acquitted the defendant of the third count--possession of cocaine with intent to distribute. The district court sentenced Ferguson to 168 months imprisonment, recommending that he serve this sentence concurrently with a sentence he is presently serving in the Florida Department of Corrections.
 
 II
 
 13
 The standard of review for a sufficiency of the evidence claim is whether, after viewing the evidence in the light most favorable to the government, any rational trier of fact could find the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319 (1979); United States v. Jones, 735 F.2d 785, 790-91 (4th Cir.), cert. denied, 469 U.S. 918 (1984). In making this determination, we remind ourselves that the credibility of witnesses lies within the sole province of the factfinder and is not susceptible to appellate review. Pigford v. United States, 518 F.2d 831, 836 (4th Cir.1975). Guided by these standards, we find ample evidence in the record from which a jury could find Ferguson guilty as charged beyond a reasonable doubt.
 
 
 14
 We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and oral argument would not aid the decisional process.
 
 
 15
 AFFIRMED.